FILED
SEP 19 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

Name GONZALEZ (Last) BRENT (First) L (Initial)

Prisoner Number V-77321

Institutional Address CSP-SOLANO / AD-SEG P.O. BOX 4000, VACAVILLE CA 95696-04000

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

BRENT LUIS GONZALEZ
(Enter the full name of plaintiff in this action.)

vs.

Z. AHMED M.D. DR. JOSEPH CHUDY (CHIEF MEDICAL OFFICER CTF) DR. SEPULVEDA (CHIEF PHYSICIAN AND SURGEON CTF)
(Enter the full name of the defendant(s) in this action)

Case No. CV10-5654 LHK (PR)
(To be provided by the Clerk of Court)

**COMPLAINT UNDER THE CIVIL RIGHTS ACT, Title 42 U.S.C § 1983**

AMENDED COMPLAINT. ~~(PROPOSED)~~

*[All questions on this complaint form must be answered in order for your action to proceed..]*

I. Exhaustion of Administrative Remedies.

[Note: You must exhaust your administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.]

A. Place of present confinement CSP-SOLANO (AD-SEG)

B. Is there a grievance procedure in this institution?

YES (X) NO ( )

C. Did you present the facts in your complaint for review through the grievance procedure?

YES (X) NO ( )

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue a certain level of appeal, explain why. APPEAL LOG# 08-03880 SUBMITTED 8-14-08

1. Informal appeal CTF-S-08-03880 WAS STAMPED "RECIEVED" ON 9-5-08 BY HEALTH CARE APPEALS INFORMAL LEVEL WAS "BYPASSED"

2. First formal level CTF-S-08-03880 FIRST FORMAL LEVEL WAS "BYPASSED"

3. Second formal level CTF-S-08-03880 WAS RECIEVED AT SECOND LEVEL 9-9-08 BY REVIEWER AND ELEVATED TO A STAFF COMPLAINT. (PARTIALLY GRANTED) "CONFIDENTIAL INQUIRY ON Z. AHMED WAS CONDUCTED. REVIEWERS FINDING: " NO VIOLATION OF CDCR POLICY".

4. Third formal level CTF-S-08-3880 WAS SUBMITTED ON 11-5-09 FOR DIRECTOR'S LEVEL OF REVIEW - OFFICE OF THIRD LEVEL OF APPEALS. APPEAL CASE GIVEN OTLA CASE NO. OTLA-51-08-12722. APPEAL DENIED AT DIRECTOR'S LEVEL.

E. Is the last level to which you appealed the highest level of appeal available to you?

YES (X) NO ( ) PLEASE SEE ATTATCHED EXHIBIT (A)

F. If you did not present your claim for review through the grievance procedure, explain why. N/A

II. Parties.

A. Write your name and your present address. Do the same for additional plaintiffs, if any.

BRENT LUIS GONZALEZ # V-77321
CSP-SOLANO / AD-SEG
P.O. BOX 4000
VACAVILLE CA 95696-04000

B. Write the full name of each defendant, his or her official position, and his or her place of employment.

DR. Z. AHMED (FIRST NAME HAS NOT BEEN DISCLOSED TO ME) MEDICAL DOCTOR AT CTF-SOLEDAD.

DR. SEPULVEDA (CHIEF PHYSICIAN AND SURGEON CTF-SOLEDAD)

DR. JOSEPH CHUDY (CHIEF MEDICAL OFFICER CTF-SOLEDAD)

III. Statement of Claim. - 1 -

State here as briefly as possible the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

1.) ON 7-7-08 PLAINTIFF SUBMITTED A CDCR 7362 - REQUEST FOR MEDICAL SERVICES FORM BECAUSE HE HAD BEEN EXPERIENCING SEVERE ABDOMINAL PAIN IN HIS LOWER RIGHT ABDOMINAL REGION AND GROIN AREA, ALONG WITH NAUSEA AND LOSS OF APPETITE FOR APPROXIMATELY FIVE DAYS.

2.) ON JULY 9, 2008 PLAINTIFF ATTENDED "SICK CALL" FOR THIS ISSUE, AT THE CALIFORNIA TRAINING FACILITY'S NORTH FACILITY MEDICAL ANNEX. HE EXPRESSED TO THE R.N. (REGISTERED NURSE) THAT HE WAS IN EXCRUCIATING PAIN AND HAD BEEN FOR APPROXIMATELY A WEEK. HE PLEADED TO SEE A DOCTOR THAT DAY BUT THE REQUEST WAS NOT HONORED. RATHER AN APPOINTMENT WITH A DR. Z. AHMED WAS SCHEDULED FOR JULY 17, 2008, EIGHT DAYS LATER. AT THIS "SICK CALL" VISIT, PLAINTIFF'S DOCTOR'S APPOINTMENT DATE WAS NOT DISCLOSED TO HIM.

3.) ON JULY 17, 2008 PLAINTIFF ATTENDED APPOINTMENT WITH DR. Z. AHMED.

(STATEMENT OF CLAIM CONTINUED ON SEPERATE PAGE.)

IV. Relief.

Your complaint cannot go forward unless you request specific relief. State briefly exactly what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

COMPENSATORY DAMAGES AND PUNITIVE DAMAGES AGAINST EACH DEFENDANT FOR PLAINTIFFS PHYSICAL AND EMOTIONAL INJURIES AND THE NEAR COSTING OF THE PLAINTIFF'S LIFE IN THE AMOUNT OF $2,000,000.00 FOR COMPENSATORY

4.) BY THE TIME PLAINTIFF ATTENDED THIS APPOINTMENT HE HAD BEEN IN EXTREME PAIN, SUFFERING AND HE HAD FELT ILL FOR SEVERAL DAYS. IT WAS EXTREMELY PAINFUL FOR THE PLAINTIFF TO DO EVEN THE SMALLEST OF MOVEMENTS (e.g. WALK, LAY DOWN, LIFT HIS ARMS, STAND). PLAINTIFF WAS ALSO IN EXTREME PAIN WHEN HE WOULD URINATE AND WAS DEVELOPING A COUGH. PLAINTIFF HAD LOST 8 POUNDS SINCE HIS VISIT TO "SICK CALL" ON JULY 9, 2008 DUE TO NAUSEAU AND LOSS OF APPETITE.

5.) PLAINTIFF ATTEMPTED TO EXPLAIN THESE ISSUES TO DR. AHMED BUT WAS UNSUCCESSFUL DUE TO DR. AHMED'S SARCASTIC, DISMISSIVE AND MOCKING ATTITUDE. FOR THE DURATION OF THE APPOINTMENT DR. AHMED TREATED PLAINTIFF AND PLAINTIFF'S MEDICAL ISSUES WITH EXTREME DISREGARD, DISRESPECT, AND UNPROFFESSIONALISM.

6.) DR. AHMED MADE VARIOUS SARCASTIC COMMENTS TO THE PLAINTIFF ONE SERIOUS BEING "SHOW ME DOCTOR, SHOW ME." "YOU'RE A DOCTOR RIGHT." WHEN PLAINTIFF TRIED TO SHOW DR. AHMED HIS AREA OF PAIN, AND EXPLAIN EVERYTHING THAT HE WAS FEELING.

7.) AFTER PLAINTIFF SHOWED DR. AHMED HIS AREA OF PAIN DR. AHMED SIMPLY LOOKED AT THE PLAINTIFF WITHOUT ANY TYPE OF EXAMINATION AND STATED "YOU ARE O.K. NOTHING IS WRONG WITH YOU." THEN TURNED AWAY AND BEGAN WRITING IN HIS NOTES.

8.) PLAINTIFF BEGGED DR. AHMED TO PLEASE EXAMINE HIM BECAUSE HE FELT EXTREMELY ILL AND WAS IN PAIN AND HAD BEEN SO FOR TWO WEEKS AND HAD JUST WAITED THROUGH MANY DAYS OF PAIN JUST TO GET THE OPPORTUNITY TO HAVE THIS APPOINTMENT AND SEE A DOCTOR. DR. AHMED CONTINUED TO DISREGARD THE PLAINTIFF AND MAINTAINED AN EVEN MORE DISMISSIVE ATTITUDE. STATING: "YOU ARE DONE GONZALEZ".

9.) PLAINTIFF PLEADED WITH DR. AHMED FOR HELP BUT WAS IGNORED. PLAINTIFF THEN ADVISED DR. AHMED THAT HE MAY NEED TO FILE A CDCR 602 APPEAL IN ORDER TO RECIEVE A PROPER EXAMINATION AND SOME HELP. AFTER BEING TOLD THIS DR. AHMED BECAME VERY CONFRONTATIONAL AND THREATENED THE PLAINTIFF WITH A CDCR-115 DISCIPLINARY WRITE UP FOR "WASTING HIS TIME" AND "FOR MAKING A JOKE" IF PLAINTIFF FILED A CDCR 602. DESPITE THIS THREAT PLAINTIFF CONTINUED TO PLEAD FOR HELP BUT TO NO AVAIL.

10.) PLAINTIFF WAS FORCED TO LEAVE DR. AHMED'S OFFICE. ON HIS WAY OUT PLAINTIFF ASKED A

CORRECTIONAL OFFICER JOHN DOE TO PLEASE HELP HIM AND ASK ANOTHER DOCTOR TO SEE HIM BECAUSE DR. AHMED IS REFUSING TO EXAMINE HIM. CORRECTIONAL OFFICER TOLD PLAINTIFF THAT THERE WAS NOTHING HE COULD DO AND THAT THE PLAINTIFF WOULD HAVE TO FILL OUT ANOTHER "SICK CALL" SLIP. PLAINTIFF LEFT THE MEDICAL ANNEX WITHOUT AN EXAM OR MEDICAL ATTENTION.

11.) PLAINTIFF'S CONDITION WORSENED OVER THE NEXT FEW DAYS FOLLOWING HIS APPOINTMENT WITH DR. AHMED. HIS PAIN INCREASED TO SEVERE UNBEARABLE LEVELS TO THE POINT THAT PLAINTIFF FELT THAT HE MAY BE DYING. PLAINTIFF WAS VIOLENTLY ILL EXPERIENCING SHIVERING, COLD SWEATS, NO APPETITE, NASEAU, VOMITING DIZZINESS WITH EXTREME PAIN IN HIS ABDOMEN, GROIN, AND PAIN DURING URINATION THAT WAS FREQUENT.

12.) ON JULY 21, 2008 IN "WHITNEY HALL" HOUSING UNIT PLAINTIFF GAVE A CDCR 7362 HEALTH CARE SERVICES REQUEST FORM DIRECTLY TO M.T.A./R.N. JANE DOE AND EXPLAINED HIS CIRCUMSTANCES AND THAT HE NEEDED HELP. SHE AGREED PLAINTIFF DID NOT LOOK WELL. STILL, NO IMMEDIATE HELP CAME FROM THIS ENCOUNTER.

13.) ON JULY 22, 2008 IN "WHITNEY HALL" PLAINTIFF ONCE AGAIN GAVE ANOTHER CDCR 7362 FORM DIRECTLY TO AN M.T.A./R.N. NAMED "ROY". PLAINTIFF WROTE "EMERGENCY!!" ON TOP OF SAID FORM BECAUSE HE WAS IN SO MUCH PAIN; ILL, AND IN FEAR FOR HIS LIFE. "ROY" AGREED THAT PLAINTIFF DID NOT LOOK WELL AND THAT HE'D CALL HIM UP TO MEDICAL SHORTLY.

14.) APPROXIMATELY TWO HOURS LATER PLAINTIFF WAS REQUESTED AT THE MEDICAL ANNEX. THERE HE WAS BRIEFLY SEEN AND EXAMINED BY M.T.A./R.N. "ROY". AT THIS TIME PLAINTIFF TOLD "ROY" THAT HE FELT LIKE HE WAS "DYING". "ROY" AGREED THAT PLAINTIFF NEEDED IMMEDIATE DOCTOR'S ATTENTION AND THAT HE LOOKED VERY ILL AND THUS "ROY" SAID THAT HE WAS GOING TO GO SPEAK TO DR. AHMED AND ASK HIM TO SEE THE PLAINTIFF. "ROY" WALKED APPROXIMATELY 16 FEET AWAY TO WHERE DR. AHMED WAS LOCATED IN HIS OFFICE TO GET THE PLAINTIFF A DOCTOR'S ATTENTION.

15.) M.T.A./R.N. RETURNED AND INFORMED THE PLAINTIFF THAT DR. AHMED DOES NOT WANT TO SEE THE PLAINTIFF AND THAT HE ALREADY TOLD THE PLAINTIFF THAT "NOTHING IS WRONG WITH HIM". PLAINTIFF ASKED "ROY" TO PLEASE HELP HIM AND "ROY" RETURNED TO DR. AHMED'S OFFICE TO SPEAK TO HIM ABOUT SEEING THE PLAINTIFF IMMEDIATELY. "ROY" WAS UNSUCCESSFUL IN GETTING DR. AHMED TO ATTEND TO THE PLAINTIFF AND TOLD THE PLAINTIFF THAT HE'S SORRY AND HE CAN

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

NOT DO ANYTHING ELSE BECAUSE IT IS THE DOCTOR'S DECISION AND THE DOCTOR DOES NOT WANT TO SEE THE PLAINTIFF THAT DAY AND THAT DR. AHMED WILL ONLY AGREE TO SEE THE PLAINTIFF 6 DAYS LATER ON JULY 28, 2008. PLAINTIFF ONCE AGAIN WAS DENIED A DOCTOR'S MEDICAL ATTENTION. PLAINTIFF LEFT MEDICAL ANNEX.

16.) PLAINTIFF'S CONDITION SEVERELY WORSENED AND HE WAS MOSTLY CONFINED TO HIS BED IN EXTREME ABDOMINAL AND GROIN PAIN, FEVERISH, WITH COLD SWEATS, COUGHING, VOMITING, SHIVERING, DIZZY, DELIRIOUS, AND WITH FREQUENT PAINFUL URINATION AND THE PLAINTIFF COULD NOT EAT.

17.) ON JULY 24, 2008 PLAINTIFF COULD NO LONGER FUNCTION NORMALLY AND HE INFORMED HIS UNIT OFFICER A C/O MC FARLAND. PLAINTIFF WAS TAKEN BY EMERGENCY MEDICAL GURNEY FROM HIS HOUSING UNIT TO THE NORTH FACILITY MEDICAL ANNEX AND THEN TAKEN TO THE CENTRAL FACILITY MEDICAL CENTER, X-RAYED, AND THEN RUSHED ON A GURNEY TO AN AWAITING AMBULANCE AND TAKEN BY AMBULANCE TO NATIVIDAD HOSPITAL'S EMERGENCY ROOM IN SALINAS CALIFORNIA.

18.) PLAINTIFF WAS CONNECTED TO "I.V." TUBES AND THEN GIVEN C-T SCANS AND OTHER MEDICAL TESTS PLAINTIFF WAS IN EXTREME PAIN AND VERY ILL. PLAINTIFF WAS INFORMED BY ATTENDING PHYSICIAN THAT IT WAS APPARENT HIS APPENDIX HAD RUPTURED WEEKS PRIOR AND THAT THE ONLY THING THAT SAVED THE PLAINTIFF WAS THAT HE SEEMED TO HAVE A STRONG IMMUNE SYSTEM BECAUSE HIS BODY FORMED A POCKET AROUND THE POISON THAT COMES FROM A RUPTURED APPENDIX. OTHERWISE THIS POISON WOULD HAVE INFECTED THE PLAINTIFF'S BODY AND MAY HAVE PROVED FATAL. DUE TO THIS THE PLAINTIFF'S APPENDIX HAD A MULTI-LOCULATED ABCESS, AND IT WAS EXPLAINED TO THE PLAINTIFF THAT IT WAS SO INFECTED THAT IT WAS INOPERABLE BECAUSE AN OPERATION WOULD RISK INFECTING THE PLAINTIFF'S BOWELS WHICH COULD KILL THE PLAINTIFF.

19.) PLAINTIFF REMAINED AT NATIVIDAD HOSPITAL FOR 7 DAYS, JULY 24, 2008 UNTIL JULY 31, 2008. DURING PLAINTIFF'S STAY HE REMAINED EXTREMELY ILL, CONFINED TO A HOSPITAL BED IN A WEAKENED STATE CONNECTED TO "I.V." TUBES AND HOSPITAL EQUIPMENT CONSTANTLY RECIEVING ANTI-BIOTICS FOR THE ABCESSED INFECTED APPENDIX AND ALSO

MORPHINE SEVERAL TIMES DAILY AND NIGHTLY BY WAY OF I.V. FOR THE EXCRUCIATING PAIN. AT TIMES THE PLAINTIFF'S BODY TEMPERATURE WAS BETWEEN 103° AND 104°. EXTREMELY FEVERISH.

20.) DURING THE PLAINTIFF'S STAY HE WAS TOLD BY PHYSICIAN THAT HAD HE BEEN PROPERLY EXAMINED UPON HIS VISIT TO THE DOCTOR HE MAY HAVE BEEN ABLE TO AVOID THIS SITUATION. THE APPENDICITIS COULD HAVE BEEN DETECTED AND THE ABCESS WOULD HAVE BEEN AVOIDED WHICH WOULD HAVE MADE IT POSSIBLE FOR THE PLAINTIFF TO HAVE A ROUTINE APPENDECTOMY SURGERY.

21.) PLAINTIFF IS ORDERED TO RETURN TO NATIVIDAD HOSPITAL WITHIN SIX TO EIGHT WEEKS FOR A STAGED APPENDECTOMY ONCE THE ANTI-BIOTICS TAKE AWAY THE INFECTION, AND ALSO IS ORDERED TO BE SEEN FOR A FOLLOW-UP WITHIN A FEW WEEKS OF HIS DISCHARGE (APPROX. 3 TO 4).

22.) ON JULY 31, 2008 PLAINTIFF IS DISCHARGED FROM NATIVIDAD HOSPITAL AND IS RETURNED TO CTF-SOLEDAD NORTH FAC. STILL IN AN EXTREMELY WEAK STATE AS THE ABCESS REMAINS IN HIS BODY WHICH IF RUPTURED BY ANY MEANS WILL INFECT HIS BOWEL SYSTEM. PLAINTIFF MUST TAKE ANTI-BIOTIC PILLS FOR THE INFECTION AND VICODIN PILLS AND THEN CODINE PILLS FOR THE PAIN. 3 TIMES DAILY.

23.) AUGUST 1, 2008 PLAINTIFF HAS DOCTOR'S APPOINTMENT WITH CTF-PHYSICIAN DR. KALISHER. DURING THIS INITIAL VISIT PLAINTIFF EXPRESSES TO DR. KALISHER THAT HE DOES NOT WANT TO RETURN TO THE CARE OF DR. AHMED BECAUSE PLAINTIFF IS IN FEAR FOR HIS LIFE, HIS HEALTH AND SAFETY.

24.) AUGUST 14, 2008 PLAINTIFF SUBMITS A CDCR 602 APPEAL HEALTH-CARE GRIEVANCE FORM UPON DR. Z. AHMED.

25.) PLAINTIFF HAS APPROXIMATELY 4 VISITS WITH DR. KALISHER ON THE DATES OF AUGUST 1 2008, AUGUST 8 2008, AUGUST 26 2008, AND SEPTEMBER 9, 2008 AND ONE APPOINTMENT WITH DR. MECKE ON AUGUST 18 2008. DURING ALL OF THESE VISITS PLAINTIFF REMAINED EXPRESSING FEAR AND CONCERN OF THE POSSIBILITY OF RETURNING TO THE CARE OF DR. AHMED, ALSO EXPRESSING HIS DESIRE TO STAY IN THE CARE OF DR KALISHER.

26.) SPECIFIC DATE UNKNOWN AT THIS TIME: AT AN APPOINTMENT WITH DR. KALISHER SHE INFORMS PLAINTIFF THAT HE WILL HAVE TO RETURN TO THE CARE OF DR. AHMED BECAUSE PLAINTIFF IS "HIS PATIENT" AND THAT SHE CAN NOT BE PLAINTIFF'S DOCTOR ANYMORE. PLAINTIFF PLEADS WITH DR. KALISHER NOT TO ALLOW THIS TO HAPPEN. SHE STATES THAT THERE IS NOTHING THAT SHE CAN DO AND IF THE PLAINTIFF REFUSES TO BE DR. AHMED'S PATIENT PLAINTIFF WILL NOT BE ALLOWED TO HAVE HIS SURGERY.

27.) SPECIFIC DATE UNKNOWN AT THIS TIME: PLAINTIFF RETURNS TO THE CARE OF DR. AHMED ONLY AFTER FEARING NOT BEING ALLOWED TO HAVE HIS APPENDECTOMY, AND AFTER ALSO BEING THREATENED WITH SUCH AGAIN BY UNIDENTIFIED M.T.A. / R.N. WHO WANTED PLAINTIFF TO SIGN A REFUSAL FORM OF MEDICAL SERVICES BY AHMED.

28.) SPECIFIC DATE UNKNOWN AT THIS TIME: PLAINTIFF MISSES FIRST FOLLOW-UP AT NATIVIDAD HOSPITAL FOR NO EXPLAINED REASON.

29.) SPECIFIC DATE UNKNOWN AT THIS TIME. AT APPOINTMENT WITH DR. Z. AHMED PLAINTIFF INFORMS DR. AHMED THAT HE DOES NOT WANT TO BE HIS PATIENT AND THAT HE IS AFRAID OF MORE HARM AT HIS HANDS. AHMED TELLS PLAINTIFF THAT IF HE REFUSES HE WILL NOT BE ABLE TO HAVE HIS APPENDECTOMY SURGERY. PLAINTIFF ASKS DR. AHMED WHY HE DID NOT EXAMINE HIM "THAT DAY" OR SEE HIM WHEN HE CAME IN ON THE 22 ND OF JULY. THAT HE COULD HAVE DIED BECAUSE OF HIS APPENDIX RUPTURING AND NOW ITS STILL POSSIBLE BECAUSE OF THIS ABCESS. DR AHMED STATES "THAT IT WAS THE END OF THE DAY AND THAT HE'D SEEN GUYS ALL DAY AND THAT HE WAS TIRED THAT DAY...." REFERING TO JULY 17, 2008. THE PLAINTIFF THEN INQUIRES ABOUT HIS FOLLOW-UP AND HIS STAGED APPENDECTOMY AND IS GIVEN NO RESPONSE.

30.) ON OCTOBER 9 2008 PLAINTIFF IS INTERVIEWED BY CTF CHIEF PHYSICIAN AND SURGEON DR. SEPULVEDA IN REGARDS TO PLAINTIFF'S CDCR 602 AGAINST DR. AHMED. AT THIS INTERVIEW PLAINTIFF EXPRESSES TO DR SEPULVEDA THAT HE DOES NOT WANT TO BE IN THE CARE OF DR. AHMED BECAUSE OF THE PAIN AND INJURY AHMED CAUSED PLAINTIFF AND THAT THE PLAINTIFF FEARS FURTHER HARM AND EVEN MORE SO AFTER FILING A CDCR 602 GRIEVANCE UPON AHMED. PLAINTIFF ALSO BRINGS TO THE ATTENTION OF SEPULVEDA THAT HE IS CURRENTLY OVERDUE TO RET-

URN TO NATIVIDAD HOSPITAL TO HAVE HIS APPENDECTOMY SURGERY AND THAT HE FEARS AHMED MAY NOT CARE ABOUT PLAINTIFF'S CONDITION OR HIS SURGERY. SEPULVEDA TELLS PLAINTIFF THAT HE MUST REMAIN IN THE CARE OF DR. AHMED. AND THAT HE WILL LOOK IN TO THE STATUS OF HIS SURGERY. DR. SEPULVEDA DOES NOT EVER CONTACT PLAINTIFF AGAIN.

31.) PLAINTIFF REMAINS IN CONTINUOUS PAIN AND FEAR FOR HIS LIFE AS ABCESS REMAINS INSIDE HIS BODY PLAINTIFF REMAINS PRESCRIBED TO VICODIN PILLS AND THENTO BLEDING PILLS FOR PAIN. PLAINTIFF CONTINUOUSLY INQUIRES TO DR. AHMED ABOUT HIS SURGERY AND HIS CONCERNS THAT HIS SURGERY IS LONG OVER DUE. THE PLAINTIFF'S CONCERNS ARE DISREGARDED UNTIL PLAINTIFF EXPRESSES TO DR. AHMED THAT HE MAY FILE ANOTHER CDCR 602 APPEAL IN REGARDS TO AHMED DELAYING PLAINTIFF'S SURGERY.

32.) ON OCTOBER 21, 2008 DR. JOSEPH CHUDY CHIEF MEDICAL OFFICER IS MADE AWARE OF PLAINTIFF'S CIRCUMSTANCES AND WHAT TRANSPIRED IN REGARDS TO DR. AHMED'S TREATMENT OF THE PLAINTIFF. HE ALSO IS MADE AWARE THAT PLAINTIFF REMAINS IN THE CARE OF DR AHMED EVEN AFTER ALL OF THE ISSUES WHICH HAVE CAUSED HARM AND INJURY TO THE PLAINTIFF AT THE HANDS OF DR. AHMED, NEARLY COSTING THE PLAINTIFF HIS LIFE. HOWEVER DR. CHUDY (C.M.O.) DOES NOT RECTIFY THIS ISSUE AND SIGNS DR SEPULVEDA'S REVIEW AT THE "SECOND LEVEL" OF PLAINTIFF'S CDCR 602 APPEAL. IN RESULT PLAINTIFF'S SURGERY CONTINUES TO BE DELAYED AND PLAINTIFF REMAINS IN PAIN AND AT RISK IN THE HANDS OF DR. AHMED.

33.) ON DECEMBER 11 2008 PLAINTIFF IS TAKEN TO NATIVIDAD HOSPITAL IN SALINAS CALIFORNIA FOR A STAGED APPENDECTOMY SURGERY. NEARLY 5 MONTHS AFTER PLAINTIFF'S INITIAL VISIT WITH DR. AHMED. OVER 17 WEEKS AFTER HIS DISCHARGE FROM NATIVIDAD HOSPITAL ON JULY 31, 2008. 9 WEEKS MORE THAN ORDERED BY DOCTORS AT NATIVIDAD. PLAINTIFF WAS TO RETURN 6 TO 8 WEEKS AFTER DISCHARGE.

34) PLAINTIFF TO THIS DATE STILL EXPERIENCES PAIN IN RIGHT ABDOMINAL AND GROIN AREA. PLAINTIFF ALSO SUFFERS MENTAL AND EMOTIONAL ANGUISH CAUSED BY THE EXPERIENCE OF NEARLY LOSING HIS LIFE

35.) CLAIMS FOR RELIEF —

A.) DEFENDANT DR. Z. AHMED ACTED UNDER THE COLOR OF STATE LAW IN AN INDIVIDUAL CAPACITY AND REFUSED TO EXAMINE THE PLAINTIFF ON JULY 17TH 2008 KNOWING THE PLAINTIFF WAS IN EXTREME PAIN AND BEGGING FOR MEDICAL ATTENTION. IN DOING SO THE DEFENDANT PUT THE PLAINTIFF'S LIFE AT RISK TO BE LOST. AS WELL DID NOT TREAT HIS PAIN AND SUFFERING. THIS CONSTITUTES THE DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS. VIOLATING THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION. IT ALSO RAISES THE TORTS OF NEGLIGENCE AND MEDICAL MALPRACTICE UNDER CALIFORNIA LAW.

B.) DEFENDANT DR. Z. AHMED ACTED UNDER THE COLOR OF STATE LAW IN AN INDIVIDUAL CAPACITY AND REFUSED TO ATTEND TO THE PLAINTIFF'S MEDICAL NEEDS ON JULY 22ND 2008 EVEN AFTER THE CONCERNS OF THE CTF MTA / RN WERE EXPRESSED TO THE DEFENDANT THAT THE PLAINTIFF WAS IN PAIN AND ILL AND NEEDED THE DOCTOR'S ATTENTION. THIS JEOPARDIZED AND PUT THE PLAINTIFF'S LIFE AT RISK TO BE LOST. THIS CONSTITUTES THE DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS. VIOLATING THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION. IT ALSO RAISES THE TORTS OF NEGLIGENCE UNDER CALIFORNIA LAW, AND MEDICAL MALPRACTICE UNDER CALIFORNIA LAW.

C.) DEFENDANT DR. Z. AHMED ACTED UNDER THE COLOR OF STATE LAW IN AN INDIVIDUAL CAPACITY AND THREATENED THE PLAINTIFF WITH DISCIPLINARY RE- REPRISALS IF THE PLAINTIFF PURSUED FILING A GRIEVANCE UPON DEFENDANT, WHICH IS THE RIGHT OF THE PLAINTIFF. THIS CONSTITUTES A VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION.

D.) DEFENDANT DR. Z. AHMED ACTED UNDER THE COLOR OF STATE LAW IN AN INDIVIDUAL CAPACITY AND DELAYED BY AN EXCESS OF 9 WEEKS THE PLAINTIFF'S APPENDECTOMY SURGERY. DONE SADISTICALLY AND MALICIOUSLY IN RETALIATION FOR PLAINTIFF FILING A GRIEVANCE UPON DEFENDANTS CONDUCT. THUS INFLICTING PHYSICAL AND EMOTIONAL PAIN UPON THE PLAINTIFF. A VIOLATION OF THE FIRST AM-



COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

ENDMENT OF THE U.S. CONSTITUTION PROTECTING THE PLAINTIFF'S RIGHT TO FILE A GRIEVANCE. THIS ALSO CONSTITUTES THE DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS. VIOLATING THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION. IT ALSO RAISES THE TORTS OF NEGLIGENCE AND MEDICAL MALPRACTICE UNDER CALIFORNIA LAW.

E.) DEFENDANT DR. SEPULVEDA ACTED UNDER THE COLOR OF STATE LAW IN AN INDIVIDUAL CAPACITY AND AND DESPITE THE CONCERNS OF THE PLAINTIFF REFUSED TO TAKE THE NECESSARY STEPS UNDER HIS SUPERVISION TO TAKE THE PLAINTIFF OUT OF DEFENDANT AHMED'S CARE AND TO ENSURE THE PLAINTIFF RECIEVED HIS APPENDECTOMY SURGERY ON SCHEDULE WHICH WOULD HAVE DIMINISHED THE PHYSICAL, MENTAL, AND EMOTIONAL PAIN OF THE PLAINTIFF. THIS CONSTITUTES THE DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS, VIOLATING THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION. IT ALSO RAISES THE TORTS OF NEGLIGENCE AND MEDICAL MALPRACTICE UNDER CALIFORNIA LAW.

F.) DEFENDANT DR. JOSEPH CHUDY ACTED UNDER THE COLOR OF STATE LAW IN AN INDIVIDUAL CAPACITY WHEN HE DID NOT UNDER HIS SUPERVISION ENSURE THAT THE PLAINTIFF BE TAKEN OUT OF THE CARE OF DEFENDANT AHMED CONSIDERING THE SERIOUS CIRCUMSTANCES AND ENSURE THAT THE PLAINTIFF RECIEVED HIS APPENDECTOMY SURGERY ON SCHEDULE. THIS CONSTITUTES THE DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS. VIOLATING THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION. IT ALSO RAISES THE TORTS OF NEGLIGENCE AND MEDICAL MALPRACTICE UNDER CALIFORNIA LAW.

I DECLARE AND VERIFY PURSUANT TO 28 U.S.C. §§ 1746 THAT THE FOREGOING IS TRUE AND CORRECT. COMPLAINT AMENDED THIS 21TH DAY OF JUNE 2011.

BRENT LUIS GONZALEZ
IN PRO PER.



COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

DAMAGES AND AWARD PUNITIVE DAMAGES IN THE AMOUNT THE HONORABLE COURT DEEMS THE PLAINTIFF IS ENTITLED TO AND SEES FIT.

I declare under penalty of perjury that the foregoing is true and correct.

AMENDED.

Signed this 11TH day of JUNE, 20 11

(Plaintiff's signature)