UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRENT LUIS GONZALEZ, | Case No.: 10-CV-05654-LHK |
| Plaintiffs, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| Z. AHMED, JOSEPH CHUDY, DOCTOR SEPULVEDA, | |
| Defendants. | |

Plaintiff Brent Luis Gonzalez ("Plaintiff"), a state prisoner, initiated this action against Defendants Dr. Zahed Ahmed ("Dr. Ahmed"), Dr. Michael Sepulveda ("Dr. Sepulveda"), and Dr. Joseph Chudy ("Dr. Chudy") under 42 U.S.C. § 1983, alleging deliberate indifference to serious medical needs. Before the Court is Dr. Chudy's motion for summary judgment. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing scheduled for September 11, 2014 and continues the September 11, 2014 case management conference to November 6, 2014 at 1:30 p.m. Having considered the submissions of the parties and the relevant law, and for good cause shown, the Court hereby DENIES Dr. Chudy's motion for summary judgment.

1

Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

## I.     BACKGROUND

### A. Factual Background

The following facts are taken in the light most favorable to Plaintiff unless otherwise indicated. Defendant Dr. Ahmed was Plaintiff's primary care physician at Central Training Facility ("CTF"). Third Am. Compl. ("TAC") ¶ 5. Defendant Dr. Sepulveda was the Chief Physician and Surgeon at CTF, whose duties included investigating inmate appeals regarding staff complaints and medical treatment. TAC ¶ 7; Declaration of Michael Sepulveda ("Sepulveda Decl."), ECF No. 57, Exh. M, ¶ 2. Defendant Dr. Chudy was the Chief Medical Officer and Healthcare Manager at CTF, and was also responsible for reviewing inmate appeals. TAC ¶ 6; Declaration of Joseph Chudy ("Chudy Decl."), ECF No. 169, Exh. E, ¶ 4. On July 7, 2008, Plaintiff submitted a request for medical services because he was having severe abdominal pain in his lower right abdominal region and groin area, and had been experiencing nausea and loss of appetite for about three days. TAC ¶ 8. Two days later, Plaintiff saw a nurse and requested to see a doctor that day. Declaration of Brent Luis Gonzalez ("Pl. Decl."), ECF No. 72, ¶ 4. The nurse scheduled Plaintiff for an appointment with Dr. Ahmed on July 17, 2008. *Id.* By the time Plaintiff saw Dr. Ahmed, it was very painful for Plaintiff to make even the smallest of movements, it hurt when he urinated, and he was developing a cough. TAC ¶ 9.

At this point, the parties' versions of events differ. According to Plaintiff, on July 17, 2008, when Plaintiff tried to explain these pains and symptoms to Dr. Ahmed, Dr. Ahmed was sarcastic, dismissive, and mocking. *Id.* When Plaintiff tried to show Dr. Ahmed where he was feeling pain, Dr. Ahmed did not examine him at all, but instead, stated, "You are okay. Nothing is wrong with you," and then turned away and began writing in his notes. *Id.* Plaintiff begged Dr. Ahmed to examine him, but Dr. Ahmed merely dismissed him. *Id.* Plaintiff threatened that he would have to file an administrative grievance so that he could receive a proper examination, and Dr. Ahmed threatened Plaintiff with a disciplinary write-up for "wasting his time," and "making a joke." *Id.* Plaintiff left Dr. Ahmed's office without a medical examination or relief. *Id.* Plaintiff asserts that,

2

1  at no time did Dr. Ahmed ever ask if he was experiencing nausea, vomiting, diarrhea, or

2  constipation, nor did Plaintiff ever deny that he had those symptoms. Pl. Decl. ¶ 7. In fact, Plaintiff

3  states that he had been experiencing all those symptoms on that day. *Id.*; TAC ¶ 9.

4  According to Dr. Ahmed, at Plaintiff's appointment on July 17, 2008, Dr. Ahmed wanted to

5  rule out possible issues associated with abdominal pain, such as appendicitis, and asked Plaintiff if

6  he was experiencing any symptoms such as diarrhea, constipation, vomiting, or nausea. Declaration

7  of Zahed Ahmed ("Ahmed Decl."), ECF No. 57, Exh. A, ¶ 6. Dr. Ahmed states that Plaintiff

8  denied having those symptoms. *Id.* Dr. Ahmed also states that there were no other symptoms

9  suggestive of appendicitis, such as tenderness, rigidity, or inflammation around the abdomen. *Id.*

10 Thus, Dr. Ahmed determined that Plaintiff did not need extra testing at that time, but directed

11 Plaintiff to report to sick call if he experienced any nausea, vomiting, diarrhea, constipation, or

12 fever. *Id.*; Appendix of Evidence in Support of Defendant Dr. Chudy's Motion for Summary

13 Judgment ("App'x"), ECF No. 57, Ex. E. Plaintiff's condition worsened over the next few days,

14 and his pain was so unbearable that Plaintiff felt as if he were dying. TAC ¶ 10. On July 21 and

15 July 22, 2008, Plaintiff submitted two separate requests for medical assistance, and on the second

16 request, wrote "emergency" on the form because he was in fear for his life. TAC ¶¶ 11, 12. The

17 requests indicated that Plaintiff was unable to eat due to the pain, and that Plaintiff was nauseous

18 and breaking out in sweats. Pl. Decl. ¶ 14. Both forms also requested a different doctor because Dr.

19 Ahmed had refused to examine him at the earlier appointment. Pl. Decl. ¶¶ 11–15.

20 Here again, the parties' stories differ. According to Plaintiff, a few hours later, on July 22,

21 2008, Plaintiff was seen by Nurse Toledo, who agreed that Plaintiff needed immediate attention.

22 TAC at ¶ 12–13; Pl. Decl. ¶ 16. Nurse Toledo walked a few feet down to Dr. Ahmed's office to

23 speak with Dr. Ahmed on Plaintiff's behalf. TAC ¶ 13. Nurse Toledo returned and informed the

24 Plaintiff that Dr. Ahmed did not want to see him, that Dr. Ahmed stated that he had already tended

25 to Plaintiff, and that Dr. Ahmed said "nothing [was] wrong with [Plaintiff]." Pl. Decl. ¶ 16. At

26 Plaintiff's urging, Nurse Toledo attempted again to have Dr. Ahmed look at Plaintiff, but was

27 unsuccessful. TAC ¶ 13. Dr. Ahmed did not want to see Plaintiff until his next scheduled

28

3

Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

appointment a few days later. *Id.* According to Dr. Ahmed, Nurse Toledo told him about Plaintiff's condition, and Dr. Ahmed informed Nurse Toledo that Plaintiff was scheduled for a follow-up exam on July 25, 2008. Ahmed Decl. ¶ 8. Because Plaintiff was "not experiencing any of the symptoms associated with appendicitis, or any other serious medical condition, he did not require any additional treatment at this time." *Id.*

Thereafter, Plaintiff's condition worsened so much that he was mostly confined to his bed in pain with a fever, coughing, vomiting, shivering, and frequent painful urination. TAC ¶ 14. On July 24, 2008, Plaintiff could no longer withstand the pain, and informed Unit Officer McFarland. *Id.* ¶ 15. Plaintiff was taken to the medical center at CTF. *Id.* Dr. Ahmed examined Plaintiff at the clinic, and reviewed Plaintiff's chart. Ahmed Decl. ¶ 9. In the chart, Dr. Ahmed noticed that three weeks prior, Plaintiff reported to a nurse that he had attempted to insert a packet of tobacco into his rectum. *Id.*; Pl. Decl. ¶ 18. Plaintiff alleges that it did not fully penetrate his rectum, and he immediately removed it because it was uncomfortable. Pl. Decl. ¶¶ 18, 20. Dr. Ahmed reports that after he learned that Plaintiff had inserted something into his rectum, and observed that Plaintiff's abdominal area was tender, Plaintiff's tongue was moist, and Plaintiff displayed a fever, Dr. Ahmed believed that Plaintiff might have perforated his rectum, and ordered Plaintiff to the Natividad Medical Center Emergency Room ("Natividad"). Ahmed Decl. ¶ 10. Plaintiff was rushed by ambulance to Natividad. TAC ¶ 15. Plaintiff was placed on IV tubes and given CT scans and other tests. *Id.* ¶ 15.

While at Natividad, Plaintiff was informed by one of the doctors that his appendix had burst a few weeks prior, and that the only thing that saved him was that his immune system was very strong because normally, the poison from a ruptured appendix would have infected Plaintiff's body and been fatal. TAC ¶ 15. While at Natividad, Plaintiff was directed to return between 6–8 weeks later for an appendectomy. *Id.* ¶ 17. Plaintiff remained at Natividad for seven days until July 31, 2008. *Id.* During that time, Plaintiff was connected to IV tubes and hospital equipment so that he could receive antibiotics for an abscess and infected appendix, and also morphine for the pain. *Id.* ¶ 16. Another physician told Plaintiff that, had he been examined properly, the appendicitis could

4
Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

have been detected earlier, and the abscess would have been avoided. *Id.* ¶ 15. On July 31, 2008, Plaintiff was transferred back to CTF.

Upon Plaintiff's return to CTF, Dr. Kalisher took over as Plaintiff's primary care practitioner. TAC ¶ 18. Between August 1 and September 9, 2008, Plaintiff had four appointments with Dr. Kalisher, and one with Dr. Moore. During these appointments, Plaintiff repeatedly expressed fear and concern about the possibility of returning to see Dr. Ahmed. *Id.* On September 9, 2008, Dr. Kalisher informed Plaintiff that she could no longer be Plaintiff's doctor, and that Dr. Ahmed would treat him. *Id.* ¶ 20. Dr. Chudy and Dr. Sepulveda ordered Dr. Kalisher to stop treating him. *Id*; Mayer Decl., Exh. S. Dr. Kalisher informed Plaintiff that he would not be allowed to have an appendectomy if he refused to see Dr. Ahmed. Mayer Decl., Exh. S. On September 11, 2008, Plaintiff returned for a follow-up appointment at Natividad, where his CT-scan revealed "[n]o discrete abscesses." *Id.* ¶ 23.

On September 15, 2008, Dr. Ahmed followed-up on the status of Plaintiff's surgery. *Id.* ¶ 24. Plaintiff told Dr. Ahmed that he no longer wanted to be Dr. Ahmed's patient. Dr. Ahmed told Plaintiff that if Plaintiff refused to see him, then Plaintiff would not be able to have his appendectomy. *Id.* Plaintiff asked Dr. Ahmed why he did not properly examine him on July 17, 2008, and Dr. Ahmed stated that it was because he saw Plaintiff at the end of the day, and Dr. Ahmed was tired. *Id.* ¶ 22. Plaintiff asked about scheduling follow-up appointments and his appendectomy, but Dr. Ahmed did not respond. *Id.* ¶¶ 22, 24.

On September 30, 2008, Plaintiff saw Dr. Ahmed, and it was confirmed that Plaintiff no longer had an infection or an abscess around his appendix. *Id.* ¶ 24. However, Dr. Ahmed again failed to respond to Plaintiff's inquiry about when the surgery would be. *Id.* On October 8, 2008, Plaintiff returned to Natividad for his pre-surgery appointment. Pl. Decl. ¶ 44. The surgeon at Natividad examined Plaintiff and confirmed that the abscess was resolved, and determined that Plaintiff needed an appendectomy as soon as possible. *Id.*

On August 14, 2008, Plaintiff submitted a CDCR Form 602-HC Health Care Appeal. Declaration of Melanie Mayer ("Mayer Decl."), ECF No. 172, Exh. I ("Form 602-HC"). Plaintiff

5

Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

detailed his grievances against Dr. Ahmed, including Dr. Ahmed's alleged failure to examine, diagnose, or otherwise provide adequate medical care for Plaintiff's appendicitis. *Id.* Plaintiff also claimed his "health is at risk due to the [abscessed] appendix," and that his "[m]edical condition has yet to be resolved." *Id*. The Health Care Appeals Office stamped Plaintiff's Form 602-HC "Received" on September 5, 2008. *Id.*; Opp'n at 5. By September 9, 2008, Dr. Chudy, in his capacity as the Chief Medical Officer, reviewed and classified Plaintiff's appeal as a staff complaint. Opp'n at 18; App'x, Exh. E, ¶ 6; Mayer Decl., Exh. C ("Chudy Depo."), at 216:2–25, 217:1–16. Staff complaints "bypass[]" the informal and first formal levels of review. *See* Form 602-HC at 1–2; Chudy MSJ at 11–12. As part of the second formal level of review, CTF Chief Physician Dr. Sepulveda interviewed Plaintiff on October 9, 2008, and Plaintiff asked to be released from Dr. Ahmed's care for fear of further harm. TAC ¶ 26; Chudy MSJ at 12. Dr. Sepulveda told Plaintiff that if he wanted his surgery, he had to stay with Dr. Ahmed, and that Dr. Sepulveda would check into the status of Plaintiff's surgery. Pl. Decl. ¶ 46. Plaintiff never heard from Dr. Sepulveda after that. TAC ¶ 26. After reviewing Dr. Sepulveda's findings and recommendation, Dr. Chudy issued a memorandum response on October 21, 2008, concluding that Dr. Ahmed did not violate California Department of Corrections and Rehabilitation ("CDCR") policy. *Id.* ¶ 27. The parties dispute whether Dr. Chudy independently reviewed Plaintiff's medical records as part of his review. *See* Chudy MSJ at 12; Opp'n at 6–7. Plaintiff appealed the denial of his Form 602-HC appeal at the second level by pursuing third level review, also known as "Director's Level Review." Mayer Decl., Exh. M. The Office of Third Level Appeals – Health Care denied Plaintiff's appeal on July 27, 2010, concluding that the "content of the inquiry supported the conclusions determined," and informing Plaintiff that [t]his decision exhausts your available administrative remedy within the CDCR." *Id.* at 2–3.

      Plaintiff claims that after September 30, 2008, Plaintiff was denied all medical care, and his surgery was unreasonably delayed until December 11, 2008. TAC ¶¶ 29–30. During that time, Plaintiff submitted approximately five requests for medical services, but none were ever answered. *Id.*

6

Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**B. Procedural Background**

Plaintiff filed his *pro se* Complaint on December 13, 2010. ECF No. 1. He filed his First Amended Complaint on April 12, 2011. ECF No. 16. Defendant Dr. Ahmed answered on May 3, 2011, and also moved to dismiss Plaintiff's state law claims. ECF Nos. 19, 20. On September 19, 2011, the Court granted Defendant's motion to dismiss with leave to amend, and Plaintiff filed his Second Amended Complaint. ECF Nos. 52, 53. Defendants Dr. Ahmed and Dr. Sepulveda answered on October 13, 2011, and again moved to dismiss Plaintiff's state-law tort claims. ECF Nos. 54, 55. The Court dismissed the state law claims on November 22, 2011. ECF No. 62. Defendants Dr. Ahmed and Dr. Sepulveda moved for summary judgment on November 14, 2011, which the Court granted in part, and denied in part on September 9, 2012 ("September 9, 2012 Order"), ECF No. 80. Plaintiff renewed his motion for the Court to appoint counsel on December 18, 2012, ECF No. 86, which the Court granted on February 5, 2013, ECF No. 90.

With the assistance of counsel, Plaintiff filed a motion for reconsideration on April 8, 2013, ECF No. 108, which the Court granted in part, and denied in part on June 24, 2013, ECF No. 117. In the June 24, 2013 order, the Court directed the parties to file briefs addressing whether there was a material issue of fact as to Dr. Sepulveda's and Dr. Chudy's alleged deliberate indifference. Order Granting in Part and Denying in Part Plaintiff's Motion for Reconsideration ("June 24, 2013 Order"), ECF No. 117, at 9. On August 27, 2013, the Court granted in part and denied in part Plaintiff's motion for leave to file a renewed motion for reconsideration. ("August 27, 2013 Order"), ECF No. 127. In the August 27, 2013 Order, the Court granted Plaintiff's motion for reconsideration as to the Court's previous grant of summary judgment in favor of Dr. Sepulveda and Dr. Chudy on Plaintiff's deliberate indifference claim. Plaintiff filed the TAC on August 28, 2013. ECF No. 129.

While Dr. Ahmed and Dr. Sepulveda filed their appearances before the Court between March and June of 2011, ECF Nos. 14, 34, Dr. Chudy did not appear before the Court until October 2013. ECF No. 139. Dr. Chudy filed the present motion for summary judgment on August

7

Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

1, 2014. ("Chudy MSJ"), ECF No. 169. Plaintiff filed his opposition on August 15, 2014. ("Opp'n"), ECF No. 171. Dr. Chudy filed his reply on August 22, 2014. ("Reply"), ECF No. 176.

## II.   LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Where the nonmoving party provides evidence that conflicts with the moving party's evidence, the Court must accept as true the nonmoving party's evidence. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

### III. DISCUSSION

Dr. Chudy makes three arguments in support of his motion for summary judgment: (1) that Plaintiff failed to exhaust his administrative remedies; (2) that Dr. Chudy was not deliberately indifferent to Plaintiff's medical needs; and (3) that Dr. Chudy is entitled to qualified immunity. The Court addresses each issue in turn.

#### A. Exhaustion

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all of their available administrative remedies prior to filing suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997(e). Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). The defendant "must produce evidence proving failure to exhaust in order to carry [his or her] burden." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). In order to properly exhaust his or her administrative remedies, a prisoner's "grievance need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). "'A claimant is not required to provide the agency with a preview of his lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant. A claim can put an agency on notice of facts it should discover during its investigation of the claim.'" *Gomez v. Winslow*, 177 F. Supp. 2d 977, 982 (N.D. Cal. 2001) (quoting *Sheptin v. United States*, No. 99 C 8459, 2000 WL 1788512, at *3 (N.D. Ill. Dec. 5, 2000)). Whether an inmate's grievance satisfies the PLRA's exhaustion requirement is determined by the prison's own grievance process. *Griffin*, 557 F.3d at 1120.

The State of California provides its inmates the right to administratively appeal "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal.Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must generally proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal

9

form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. See *id.* § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). Certain appeals, such as health care staff complaints, may be waived past initial levels of review. *See* Mayer Decl., Exh. BB at 4; Form 602-HC at 1–2; Chudy MSJ at 11–12. A final decision at the director's level satisfies the exhaustion requirement under the PLRA. *Barry*, 985 F. Supp. at 1237–38.

Defendant Dr. Chudy does not contest that Plaintiff exhausted his administrative remedies for his claim that Dr. Ahmed was deliberately indifferent to his serious medical needs. *See* Chudy MSJ at 16. Indeed, Plaintiff's detailed statement in his Form 602-HC appeal laid out his allegations that Dr. Ahmed had failed to examine, diagnose, or treat Plaintiff's appendicitis, which "placed [his] life in jeopardy." Form 602-HC at 3–4. Nor does Dr. Chudy contest that Plaintiff diligently pursued this appeal to the director's level after Dr. Chudy declined to remove Plaintiff from Dr. Ahmed's care, and that Plaintiff was informed that he had "exhaust[ed] [his] available administrative remedy within the CDCR." Mayer Decl., Exh. M, at 3. Instead, Dr. Chudy contends that Plaintiff's grievances do not specifically allege that Dr. Chudy and Dr. Sepulveda denied Plaintiff's second level appeal and required him to return to Dr. Ahmed's care in order to receive his surgery. The Court rejects this argument.

Plaintiff's Form 602-HC appeal properly exhausted his administrative remedies as to Dr. Chudy and Dr. Sepulveda. The Form 602-HC provides only two instructions for prisoners filling out a grievance: "Describe Problem" and "Action Requested." Form 602-HC. The form does not specify a particular level of detail or require any additional information. Under these circumstances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). There is no dispute that Plaintiff's initial grievance sufficiently alerted the prison to Dr. Ahmed's alleged deliberate indifference to Plaintiff's medical condition. Dr. Chudy chose to return Plaintiff to Dr. Ahmed's care. In appealing that decision, Plaintiff sought director's level review and wrote that he was "requesting a director's level review because [he felt] that this matter of

10
Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

misconduct and blatant unprofessional neglect and medical malpractice on the part of Dr. Z. Ahmed is of an urgent and serious nature . . . ." Form 602-HC at 5. Dr. Chudy cites no authority for the proposition that an inmate must separately grieve the denial of an administrative appeal where both the underlying appeal and its denial address the same grievance. Plaintiff exhausted the original appeal, and under these circumstances, the Court declines to impose any additional burden. Plaintiff's diligent pursuit of his Form 602-HC appeal "alert[ed] the prison to a problem" and gave the prison an opportunity to "facilitate its resolution" by removing Plaintiff from Dr. Ahmed's care. *See Griffin*, 557 F.3d at 1120.

Moreover, Plaintiff's claim against Dr. Chudy is merely an aspect of the inadequate-medical-treatment claim Plaintiff notified prison officials about in his Form 602-HC. *See, e.g.*, *Gomez*, 177 F. Supp. 2d at 982. In *Gomez*, the court rejected the defendants' exhaustion argument, concluding that the plaintiff had "made clear that his concern was with the inadequate medical treatment he had received." *Id.* The *Gomez* plaintiff filed an administrative appeal alleging "[i]nadequate medical attention to a serious medical need" and explained that he had not received treatment for his hepatitis C despite his "numerous requests to the medical staff." *Id.* at 979. In his subsequent lawsuit, the plaintiff asserted an Eighth Amendment claim of deliberate indifference to his serious medical needs. *Id.* He alleged that the prison medical staff had failed to inform him of his hepatitis C diagnosis for years, delayed his treatment, and failed to respond to his requests for information. *Id.* at 980. Though the *Gomez* plaintiff only detailed one of these claims in his administrative appeal, the court concluded that the other allegations were "simply aspects" of the inadequate-medical-treatment problem, because "all of the elements of [the plaintiff's] claim relate to his dissatisfaction with the treatment he received for his hepatitis." *Id.* at 983. Similarly, Plaintiff alleged inadequate medical treatment and fear that Dr. Ahmed would commit future misconduct. *See* Form 602-HC. Whether Dr. Chudy was aware of this alleged inadequate treatment but denied Plaintiff access to a different physician directly relates to Plaintiff's concerns regarding Dr. Ahmed's care. *See Gomez*, 177 F. Supp. 2d at 982–83. Plaintiff's allegations against Dr. Chudy are therefore encompassed within his original grievance.

11

Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

### B. Deliberate Indifference

In its August 27, 2013 Order, the Court vacated its previous grant of summary judgment in favor of Dr. Sepulveda and Dr. Chudy, finding that Plaintiff had "pointed out new material facts that demonstrate a genuine dispute regarding when Dr. Sepulveda and Dr. Chudy became aware of plaintiff's complaints, and whether they were deliberately indifferent in failing to act to prevent a substantial risk of harm to plaintiff." August 27, 2013 Order at 3. The Court once more concludes that Plaintiff has demonstrated a triable issue of fact as to Dr. Chudy's deliberate indifference to his serious medical needs.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See *McGuckin*, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *Id*. at 1059–60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337–41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment. . . . Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.

12
Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

2000) (internal quotations and citation omitted); see *Farmer*, 511 U.S. at 835–36 & n.4 (recognizing that neither negligence nor gross negligence will constitute deliberate indifference).

First, the parties dispute how serious Plaintiff's medical needs were in September 2008, when Dr. Chudy denied Plaintiff's administrative appeal, and the months following Dr. Chudy's decision. The Court previously concluded that Plaintiff had shown serious medical needs leading up to his visit to Natividad in July 2008. *See* September 9, 2012 Order at 9. In support of his claim that Plaintiff's pain and suffering was not serious, Dr. Chudy relies on Plaintiff's normal vital signs, the "absence of peritoneal signs," and determinations by CTF doctors other than Dr. Ahmed that Plaintiff was "clinically stable" at the time. *See* App'x, Ex. F, ¶¶ 29–33. In contrast, Plaintiff alleges he submitted five separate medical requests after being returned to Dr. Ahmed's care, explaining that he continued to suffer "extreme pain and symptoms of illness similar to when [his] appendix initially ruptured . . . [and] need[ed] to see a doctor immediately" because he was "in fear that [he] might die." Pl. Decl. ¶ 51. Plaintiff also cites the post-surgery pathology report stating that his appendix showed "[a]cute inflammation." Mayer Decl., Exh. W. That Plaintiff was "clinically stable" does not address Plaintiff's apparent re-inflammation of his appendix and the "extreme pain" and suffering that Plaintiff recorded in his additional requests for medical treatment. Plaintiff has also alleged that each of his five medical requests were denied.[1] Pl. Decl. ¶ 51. Viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that Plaintiff has put forth sufficient evidence to raise a factual dispute as to the seriousness of his medical needs at the time of, and following Dr. Chudy's decision.

Second, while Dr. Chudy may not have been "directly involved" in Plaintiff's initial diagnosis, Plaintiff has sufficiently alleged that Dr. Chudy's knowing failure to address Dr.

---

[1] The Court previously rejected Plaintiff's claim that Defendants had deliberately delayed his appendectomy, concluding that Plaintiff had shown no facts linking the date of his appendectomy to any actions taken by Dr. Ahmed, Dr. Chudy, or Dr. Sepulveda. August 14, 2013 Order at 4. In his opposition to Dr. Chudy's motion for summary judgment, however, Plaintiff contends that Dr. Ahmed was required to schedule routine appointments every 30 days until his surgery under the prison's agreement with the federal court Receiver. *See* Opp'n at 19; Mayer Decl., Exh. Z, at 5. The parties do not dispute that Dr. Ahmed did not see Plaintiff between September 30, 2008 and December 11, 2008, the date of Plaintiff's surgery. While Plaintiff's evidence does not show an intentional delay in the date of his surgery, it does raise the inference that Dr. Ahmed knowingly denied Plaintiff medical care from September 30, 2008 until December 11, 2008.

13
Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

1    Ahmed's deficient care interfered with Plaintiff's medical treatment.[2] *See Taylor v. List*, 880 F.2d

2    1040, 1045 (9th Cir. 1989) (holding that a supervisor "is only liable for constitutional violations of

3    his subordinates if the supervisor participated in or directed the violations, or knew of the

4    violations and failed to act to prevent them"); *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006)

5    (holding that prison administrators are "liable for deliberate indifference when they knowingly fail

6    to respond to an inmate's requests for help"). Here, Dr. Chudy does not dispute that he knew of

7    Plaintiff's complaints against Dr. Ahmed by early September 2008. *See* Opp'n at 18; App'x, Exh.

8    E, ¶ 6; Mayer Decl., Exh. C ("Chudy Depo."), at 216:2–25, 217:1–16. Plaintiff also alleges that Dr.

9    Chudy and Dr. Sepulveda ordered Dr. Kalisher to stop treating him and forced him to return to Dr.

10   Ahmed's care. TAC ¶ 20. In support of his motion for summary judgment, Dr. Chudy argues that

11   his decision to do so was appropriate because Dr. Ahmed's conduct fell within the standard of care.

12   As the Court noted in its September 9, 2012 Order, however, there is a genuine factual dispute as to

13   whether Dr. Ahmed's conduct fell outside the standard of care.[3] *See* September 9, 2012 Order;

14   Chudy MSJ at 19; Opp'n at 20. Plaintiff has put forth sufficient evidence to establish that a genuine

15   issue of material fact exists as to whether Dr. Chudy's knowing refusal to allow Plaintiff to remain

16   in the care of another doctor constituted deliberate indifference to Plaintiff's serious medical needs.

17         Third, Dr. Chudy argues that Plaintiff "has no expert evidence in support of his claim that

18   Dr. Chudy was negligent or deliberately indifferent to his medical needs." Chudy MSJ at 19.

19   However, expert evidence is not required to show deliberate indifference. *See, e.g.*, *Sanders v.*

20   *York*, 446 F. App'x 40, 43 (9th Cir. 2011); *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010);

21   *Reidhead v. Arizona*, No. CV-12-00089, 2014 WL 2861046, at *5 (D. Ariz. June 24, 2014). Under

22   Plaintiff's version of the facts, Dr. Ahmed flatly refused to examine him because Dr. Ahmed was

---

[2] Plaintiff also argues that Dr. Chudy effectively denied him medical treatment by classifying Plaintiff's Form 602-HC appeal as a staff complaint. However, as the Court noted in its September 9, 2012 Order, "[a]n incorrect decision on an administrative appeal, or a failure to handle it in a particular way . . . did not amount to a violation of Plaintiff's constitutional rights." September 9, 2012 Order at 11. Plaintiff has not produced any evidence that a different classification would have prevented or mitigated Plaintiff's injury, or that Dr. Chudy intentionally classified Plaintiff's appeal as a staff complaint in order to avoid affording Plaintiff relief.
[3] Dr. Chudy argues that his expert testimony concludes Plaintiff "lacked the usual signs and symptoms of a patient with a perforated appendix . . . ." Chudy MSJ at 19. Plaintiff's expert disagrees. *See* Vasquez Decl., Exh. A ¶¶ 11–21.

14

Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

tired at the end of the day. TAC ¶¶ 9, 22. Plaintiff further alleges that Dr. Chudy and Dr. Sepulveda knew that Dr. Ahmed had denied Plaintiff care, but nonetheless ordered Plaintiff to return to Dr. Ahmed's care. Expert testimony would not be helpful in determining whether Plaintiff's allegations are plausible. *See York*, 446 F. App'x at 43. Dr. Chudy relies on *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1987), but that case is inapposite. In *Hutchinson*, the Ninth Circuit concluded in the context of a state-law negligence claim, that "since California medical malpractice law applies, when the defendant supports his motion for summary judgment with the declarations of experts, a plaintiff who has presented no expert evidence concerning the required standard of care has failed to make a sufficient showing that there are genuine factual issues for trial." *Id.* at 393. Here, Plaintiff has no California negligence claim. Moreover, the Ninth Circuit in *Hutchinson* did not require expert testimony in the context of a deliberate indifference claim. *Id.* at 392–94.

Furthermore, in the instant case, Plaintiff has offered expert evidence disputing whether Dr. Ahmed's conduct fell within the standard of care. *See* Declaration of Rosaline Vasquez in Support of Plaintiff's Opposition to Defendant Dr. Chudy's Motion for Summary Judgment ("Vasquez Decl."), Exh. B. The Court acknowledges that Dr. Vasquez's declaration and report do not offer unequivocal statements that Dr. Ahmed's conduct fell grossly outside the requisite standard of care. However, Dr. Vasquez does refute Defendants' expert's report and contradicts Defendants' alternative theory that Plaintiff suffered from a perforated bowel. That the expert reports conflict only makes summary judgment inappropriate. *See, e.g.*, *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1038–39 (9th Cir. 2000).

The Court concludes that there is a genuine dispute of material fact as to Dr. Chudy's deliberate indifference to Plaintiff's serious medical needs.

**C. Qualified Immunity**

Dr. Chudy contends that he is entitled to qualified immunity because Plaintiff did not suffer a constitutional violation, and because Dr. Chudy reasonably believed his actions were lawful. A Court considering a claim of qualified immunity must determine: (1) whether the Plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly

15
Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

1    established such that it would be clear to a reasonable officer that his or her conduct was unlawful

2    in the situation he or she confronted. *See Pearson v. Callahan*, 555 U.S. 223, 235–37 (2009). The

3    Court may exercise its discretion in deciding which prong to address first, in light of the particular

4    circumstances of each case. *Id.* Qualified immunity shall not be resolved on summary judgment

5    where "historical facts material to the qualified immunity determination are in dispute." *Torres v.*

6    *City of Los Angeles*, 548 F.3d 1197, 1211 (9th Cir. 2008); *Lolli v. Cnty. of Orange*, 351 F.3d 410,

7    421–22 (9th Cir. 2003) (holding that material factual disputes precluded summary judgment for

8    defendants based on qualified immunity).

9          Viewing the facts in the light most favorable to Plaintiff, there is a triable issue of fact as to

10   whether Dr. Chudy's decision rose to the level of deliberate indifference. Plaintiff alleges that Dr.

11   Ahmed refused to examine, see, or treat him, which resulted in weeks of extreme pain and

12   suffering caused by a burst appendix. TAC ¶¶ 9–12. As discussed above, the Court has already

13   concluded that Plaintiff's allegations against Dr. Ahmed, if proven true, would constitute deliberate

14   indifference to Plaintiff's serious medical needs. Whether Dr. Chudy could "reasonably believe his

15   actions were lawful" turns both on whether Dr. Ahmed was, in fact, deliberately indifferent to

16   Plaintiff's serious medical needs, and Dr. Chudy's knowledge of Dr. Ahmed's conduct and

17   Plaintiff's medical condition. The parties dispute whether Dr. Ahmed refused to examine or treat

18   Plaintiff, whether Plaintiff denied having symptoms of appendicitis to Dr. Ahmed, and whether Dr.

19   Chudy actually reviewed Plaintiff's medical file prior to classifying and deciding Plaintiff's Form

20   602-HC appeal. These factual disputes are material to the qualified immunity determination

21   because they go to whether Dr. Chudy was deliberately indifferent to Plaintiff's serious medical

22   needs, and by extension, whether Dr. Chudy could have reasonably believed his actions were

23   lawful. *See Lopez*, 203 F.3d at 1131 (holding that effectively denying or intentionally interfering

24   with an inmate's medical treatment clearly violates the Eighth Amendment). These material factual

25   disputes preclude a grant of summary judgment on qualified immunity grounds. *See Lolli*, 351 F.3d

26   at 421–22.

1    Dr. Chudy argues that a reasonable supervisor in his position would believe his or her

2 actions to be lawful because he investigated the only claim Plaintiff made: past improper conduct.

3 However, Plaintiff's grievance was not solely limited to past improper conduct or past inadequate

4 care. In his Form 602-HC, Plaintiff wrote that the "danger to [his] life" remained "constant at this

5 time," because he had not yet had his appendectomy. Form 602-HC at 3. Plaintiff complained that

6 Dr. Ahmed's refusal to treat him had "resulted in a life-threatening situation that has yet to be

7 resolved." *Id.* Moreover, Plaintiff wrote in the "Action Requested" section that he wanted to ensure

8 that "no further incidents occur again: one life-threatening situation is enough." *Id.* at 2. Dr. Chudy

9 relies on *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), but that case offers little guidance here. In

10 *George*, the Seventh Circuit concluded the plaintiff had failed to allege any constitutional

11 violations by any prison official, much less the supervising officials that denied his administrative

12 appeals. *Id.* at 609–10. Here, in contrast, Plaintiff has raised triable issues of fact as to Dr. Chudy's

13 and Dr. Ahmed's deliberate indifference to his serious medical needs. His complaints to Dr. Chudy

14 referred to an ongoing and substantial risk to his health, and requested that Dr. Ahmed's actions be

15 investigated so as to prevent *future* incidents. *See* Form 602-HC. In his pleas to Dr. Kalisher, Dr.

16 Moore, and Dr. Sepulveda, Plaintiff made clear his fear that returning to Dr. Ahmed's care would

17 put him at substantial risk of harm. TAC ¶ 18–20. Under Plaintiff's version of the facts, a prison

18 official could not reasonably believe that forcing Plaintiff to return to Dr. Ahmed's care

19 unsupervised would not be an effective denial of, or intentional interference with, Plaintiff's

20 necessary medical treatment. Under these circumstances, the Court finds it would be improper to

21 grant summary judgment to Dr. Chudy on qualified immunity grounds. *See Knox v. Sw. Airlines*,

22 124 F.3d 1103, 1108 (9th Cir. 1997) ("[S]ummary judgment based on qualified immunity should

23 be denied if under the plaintiff's version of the facts the officer could not reasonably believe his

24 conduct was lawful.").

25 **IV.   CONCLUSION**

26    The Court DENIES Dr. Chudy's motion for summary judgment. Plaintiff has exhausted his

27 administrative remedies with regards to his claims for inadequate medical treatment. There is a

17
Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT

genuine dispute of material fact concerning whether Dr. Chudy's conduct rose to the level of deliberate indifference. Finally, because Plaintiff has raised a triable issue as to Dr. Chudy's deliberate indifference, the Court concludes Dr. Chudy is not entitled to summary judgment on qualified immunity.

**IT IS SO ORDERED.**

Dated: September 9, 2014

_____
LUCY H. KOH
United States District Judge

18
Case No.: 10-CV-05654-LHK
ORDER DENYING MOTION FOR SUMMARY JUDGMENT